23-5100 Mangert v. United States Mr. Corbett You may proceed Jonathan Corbett IV Appellant Rhonda Mangert May I please the court as background largely for the audience This case is about whether TSA officers may be held viable for an illegal strip search via the Federal Tort Claims Act but to be clear some of the government's arguments is that there is no recourse to the courts under any theory when there's check court abuse and if that sounds wrong it's because it is wrong There were four issues presented to the court I will try and touch them all unless the court expresses an interest in focusing in one area The first is whether under the Federal Tort Claims Act TSA officers are covered There's a law enforcement proviso that says that intentional torts are only covered from investigative or law enforcement officers I argued this position in front of the Fourth Circuit and the Ninth Circuit last year and both of those panels unanimously held that TSA officers are investigative or law enforcement officers The Eighth Circuit and Third Circuit both held the same in 2020 and 2019 respectively, Third Circuit and Bank There was quite a robust dissent in the Third Circuit case What's wrong with it? There was This is an issue that has divided lower courts and the Third Circuit, but not the ones after that so much The government's argument is essentially that we need to read a whole lot of context into a very narrow definition that says federal officers who are powered by federal law to execute searches, conduct seizures and make arrests and they want to take the context of this whole statute and a bunch of things from outside the statute and say that Congress must have meant criminal searches only and that's just not supported by the plain text of the statute There's been no binding authority in any circuit to the contrary and the government here is essentially trying to use its 13 bytes at the apple to create a circuit split We're now on court number 5 and that's not a particularly fair way to litigate They've never petitioned for certiorari on this issue. They're waiting until a court finally agrees with them and creates that And they want to give you a shot at the Supreme Court You know, I can't complain that much If I lose this case and we end up in the Supreme Court it would be my first time and an honor But unfortunately I'm here for a client who is a woman who was taken into a back room and told that she needed to lower her pants and underwear so that the TSA could get a good look at her. And TSA's own rules state unambiguously that they're not allowed to do that under any circumstances What legal weight do we give to the TSA's internal rules to that effect? I'm not sure about that question, about the answer to that Well, the question would be under a false arrest tort whether they were empowered by law, whether they had lawful authority. The regulations, the internal regulations aren't law. Those are simply things that, that's guidance so I just don't know where it fits in Certainly, but there's no statutory authority, there's no federal rules there's no regulations and there's also no constitutional authority so these searches TSA does are administrative searches that are allowed to make a very narrow search in the general public without a warrant and no court has ever held that an administrative search can go as far as a strip search. These are supposed to be unobtrusive But how do we rule in your favor and not draw every type of administrative search into the ambit of this proviso? I think that the largest difference here is that TSA physically has its hands on members of the public and inside of the bags of members of the public in a way that's likely to put them in a position where intentional torts will happen eventually. There are 2 million passengers every day who go through these screenings and every once in a while something goes wrong. But that argument is it's probably not going to happen but it's not that the statute it's not linked to the statutory text there's nothing in the text that talks about hands on it's just searches I agree that we should stop at the actual plain words of the text. It says the word searches, TSA is conducting searches and we can save the next 10 and a half minutes. But if we want to go into context clues as the government is demanding that we do, we have to consider what TSA is actually doing here and I think that it's different from the cases where the government sites where like a USDA agriculture inspection goes into a meat plant. That's not likely to generate an intentional tort where a tax person goes and searches through some records that's not likely to generate a battery of false arrests, but TSA searches are. Let me ask you just a factual question, I'm not even quite sure where it fits in but what if they find either a gun or a bomb and the passenger says, whoops, I'm sorry, I don't want to let you just take it and dispose of it I will take it and leave do they have the power to say, I'm sorry friend, you can't leave, you're restrained and we'll keep the bomb or the gun or is their only power to say, well all we can do is keep you from boarding the plane we've done that if you want to leave on your own and we cannot confiscate it what's the consequence if that happens? That's a great question, your honor. The government has argued that TSA has no right to seize evidence at all and obviously that's not the way it goes if you show up at the airport with a gun in your bag the TSA isn't giving it back for you to leave the airport. What authority do you have on that and what was given to the district court what's the record going to show on that? The record will show that there's two different types of things TSA are looking for. Contraband which is actually illegal to possess and then other things which are not allowed through the airport. So your water bottle more than 3.4 ounces is not allowed. Let's just focus on guns which you can possess in Colorado or a bomb which you cannot typically possess but let's talk about those explosives. My simple question is what does the record show about what would happen if that was discovered? Would TSA be able to hold that passenger who said I'm not going to get on the plane again or not? Or do they have to release man number two? Can he take the gun or he or she take the gun and bomb with them when they decide not to go on the plane? The record will show that if contraband, something that is illegal to possess is found, TSA holds the item to call law enforcement who then has to respond from there. Well most of the screeners are not traditional law enforcement officers. I'm coming back to the text and I maybe this links to Judge Ebell's questions. They're a screening force that's designed to make sure planes can fly safely and there's these subsidiary questions about drug possession and gun possession and the like and I understood the record to say that in addition to the TSA screeners these checkpoints also had traditional real law enforcement, you know a certified police officer, one of the TSA agents would be a certified police officer and that person then could be responsible for a seizure of illegal drugs. So I'm looking at two classes of screeners. One would be a traditional law enforcement, the others would be this quasi law enforcement that the screeners are and the strip search here was conducted by the quasi law enforcement, right? Is it fair to look at this regime as setting up two different types of law enforcement, one that might be covered by the law enforcement proviso and one that was not? So at the checkpoint they're generally not federal law enforcement officers. Those federal TSA law enforcement officers tend to be air marshals and people at other locations other than from the checkpoint. The only law enforcement at the checkpoint is usually local police. But to answer your question, yes, the government is basically saying TSA has some federal sworn officers, guns, arrest rights, handcuffs and they have these screeners and they would like to have the law enforcement authority covered by the law enforcement proviso and the screeners not. But that's not what the text of the statute says. Both of these people conduct searches, execute seizures or make arrests and that or is very important. If you do one of the three you're covered by the law. The government trying to argue that TSA screeners, those non-law enforcement do not conduct searches because the law meant criminal law enforcement searches is just a step too far. That's adding words into the statute. Do we need to worry at all about the way that the Aviation Security Act fits in, that it does not define TSOs as officers or their employees? I think that as TSA's enabling act, it doesn't define every employment role or really many employment roles at all for TSA. That was up to TSA to figure out from there. As to whether or not these people are officers, I think that the indications are that they are people who serve a public trust on a public safety mission. They wear badges that say United States officer. They refer to themselves as transportation security officers. These are some kind of officers and that's the other important part of this textual reading is that Congress wrote investigative or law enforcement officer as this group of people and the government essentially wants to cut off that investigative or and that's exactly what law enforcement, but they're the people that do the searches. They do this investigation and if law enforcement is necessary because someone has a bomb or a gun, they'll call that law enforcement in there. So your argument, if I understand correctly, is we don't need to look beyond the text? Exactly. We don't think that the text is ambiguous at all. I think that all four of the courts of appeals to put out opinions on this matter agreed that this was not an ambiguous statute. The ambiguity is being created by the government trying to put in words. Would you concede if we deemed it ambiguous that the government would win under the Dolan Cooper analogy? No, I think that Dolan is important. I think that the idea that the federal tort claims exception should be construed in a way that favors the government has been opposed by the Supreme Court. The Supreme Court said the exact opposite in Dolan, that this was intended by Congress to be sweeping authority to cover a large array of torts. And especially now that the Supreme Court has largely abrogated Bivens, which Congress thought might be in effect at the time it created the FTCA, now it's these remedies or nothing. So to try and take this narrow view... Well, it's these remedies or what the government denies Westfall certification and you sue the individuals, right, in state court. Your Honor, I've fought several dozen TSA cases. The government has never declined to issue Westfall certification. I've had clients that were digitally penetrated by TSA screeners, strip searches, this and so forth. And no challenge to scope of employment, right? I have challenged it before. I've given up on doing that at this point because it's simply not effective. The government won't waive it and if the Attorney General or his designee certifies it, there's pretty much no way that the courts overrule that. Um... I'd like to reserve my time if that's okay. You may. Thank you, Counsel. All right. Let's hear from the United States. Mr. Aguilar. Good morning. May it please the Court, Daniel Aguilar for the United States. The District Court correctly addressed the Memphis plaintiff's state law court claims and acted appropriately in denying leave to amend after the deadline for amending the complaint had passed. I'm happy to address those issues. But turning to the sovereign immunity and the limited waiver of sovereign immunity in the Federal Tort Claims Act. Before 1976, the United States had not waived immunity for the intentional courts of its employees. As we discussed in our brief, there were a series of high-profile incidents that led Congress to revisit that and enacted the law enforcement proviso here, which waives immunity for investigative or law enforcement officers who are empowered by law to execute searches, seize evidence, or make arrests for violations of federal law. Outside of the TSA context, that's consistently been understood over decades by the courts of appeals to encompass officers who have traditional criminal law enforcement authority regardless of which agency they work for and to exclude those who do not possess such authority. So that's the... Would you speak a little louder or a little closer into the microphone? Yes, Your Honor. I apologize. So, for instance, the Second Circuit in Wilson held that a parole officer who can go into a parolee's apartment and seize evidence with consent doesn't have those powers, doesn't fall within the law enforcement proviso. Similarly, the Fifth Circuit, the EUOC inspectors, who have the authority to search through people's papers, they said that is not the kind of authority that's being discussed in the law enforcement proviso. They don't fall within it. Similarly, for the Air Force security guards, it's talking about traditional criminal law enforcement. I'm happy to go to the text of this. Well, you're 0 for 4 in the circuit so far on this argument and there have been a dissent or two. I mean, focus on what's the fatal flaw in the other circuit arguments? They basically said these TSA screeners are investigating passengers looking for prohibited or illegal objects, items, for the safety of the flying traffic. Everybody has to go through it, but it's consensual. You can turn away at the checkpoint if you choose not to. But once you're in the queue and decided to be screened, then these TSA officials have the authority to do a lot of things for some reason I always get the random the beeper and I always get the pat down, even once in one of the private rooms. I suppose it's somewhat random. Maybe they have me targeted. I don't know. But once you're in the queue, there's a lot that the screeners can do, including taking passengers to private rooms. Strip search is a different matter, but at that point they're doing what you'd expect a police officer to do at a traffic stop. I disagree with that last point, Your Honor. If I can just address a factual question that you raised earlier about what their actual powers are and then get to why those other courts of appeals decisions are wrong. That's pages 12 to 13 of the Supplemental Appendix. That's the uncontested evidence that if a screener encounters something like a bomb or a gun or even an item that's lawful to possess but you can't bring onto the plane like a baseball bat, that's when they call law enforcement over. And the person is given a choice about whether or not they need to remove it to their car, but any decisions about whether there needs to be criminal enforcement action taken, that's taken by the police department. You really are going to have to get that microphone up closer. Thank you. That's better. We often ask people to get closer and for the first two minutes they're closer and then they drift back to their natural comfort zone. So you try to stay outside your natural comfort zone. Yes, Your Honor. So it's why the other courts of appeals decisions are wrong. The third and the eighth circuits, there they held that the sovereign immunity canon just doesn't come into play in the FTCA at all. That's wrong. That's based on a misreading of Dolan. Dolan said when the United States is reclaiming sovereign immunity, when those parts of the FTCA where it says we're not liable, there the court says, well you don't do sovereign immunity in that. You don't construct narrowly or broadly. You just give it its regular meaning. Here that's the intentional tort exception, right? Nobody disagrees that the United States has very clearly reclaimed sovereign immunity for intentional torts. The question is about that waiver for investigative or law enforcement officers. That's a waiver of sovereign immunity. Is the question about breadth or ambiguity? So the question is about the breadth of the waiver. It's clear that the waiver does something, right, for traditional law enforcement officers. So that's the Supreme Court's decision in FAA versus Cooper. There the United States had waived immunity for actual damages. The question is, what does that encompass? How broad is that? And the Supreme Court held when it's going to the scope of the waiver, there, if there's any ambiguity, then we rule for the government. The quote is, the question we must answer is whether it is plausible to read the statute as the government does. If so, then sovereign immunity has been obtained because there has not been a clear and unequivocal waiver. The mistake that the Fourth and Ninth Circuits did is they said, well, there are five textual indicia which all support the government, but those all have problems with them. Number one has a problem, number two has a problem, number three has a problem, and so because each one of those we find them persuasive, therefore we don't bring the sovereign immunity canon into it. That's error. The courts don't read statutes in little bites. You read them as a whole. So the textual indicia that we're pointing to is first, it's talking about officers instead of employees and that's the Eleventh Circuit's decision in Corbett. The FTC had waived How much should we rely on Corbett? I think you can rely on it for this point about whether or not they're an officer or an employee. But it's unpublished. Pro se lit again. And so it's persuasive to the extent it has the extent to persuade. So for example, all TSA employees don't have law enforcement powers. The TSA administrator can make them an officer. That's a 49 USC 1114P and that's making somebody an officer like the statute contemplate. It talks about investigative or law enforcement officers and then we talk about the Wiretap Act and the FISA. Those are other parts of the U.S. Code where that's talking about somebody with those criminal enforcement authorities. The related meanings for making arrests, seizing evidence, those are talking about criminal functions. And similarly we would construe, execute searches in that criminal fashion. The problem that, I think it was well in the Fourth Circuit case that the government's, the flaw in your argument is that it contravenes Millbrook. That you're reading things into the statute like the word criminal which isn't there. So can you help explain why that isn't a fatal flaw here? Sure. So Millbrook's entirely different. Millbrook is saying somebody was clearly a law enforcement officer. They were your prison's guard with the barrest authority. The question there was the intentional tort occurred when they weren't making an arrest executing a search or seizing evidence. And there is important to note that you're still a law enforcement officer. They don't limit it to just performing those functions. You're liable for any of the intentional torts that come up later because you're an investigative officer. As soon as it's happening in scope of duty the United States will be substituted and under the West Pole Act the liability arises. Here the question is, are you a law enforcement officer? That wasn't the question in Millbrook. And they're not the kind of investigative or law enforcement officers here. And you can look at that because it's for violations of federal law. Plaintiffs don't identify any particular federal law that would prevent you from taking an 8-ounce bottle onto the plane or a baseball bat. You can search and stop somebody from doing that because you're trying to ensure the safety of everybody. That's why it's an administrative search. And just the last part is the torts that we waive immunity for are not all of the torts that are accepted. We don't waive immunity for deceit or slander or misrepresentation. Congress waived immunity for the kinds of torts, assault and battery, false imprisonment that you would expect somebody with traditional law enforcement authority to do. And to the point about reading words into the statute, I mean, that was a concern in this court's decision in Poach which involved the Equal Access to Justice Act. There, Congress waived immunity and would provide fees and costs to somebody under the Equal Access to Justice Act if they were, quote, a prevailing party in a case brought by or against the United States. There, the plaintiff was a prevailing party, but they have prevailed against third parties. They were on the same side as the United States, but the district court ordered the United States to pay costs even though plaintiffs didn't prevail against us. This court reversed and it held a fair reading of the statute is that it doesn't contemplate this scenario and we apply the sovereign immunity canon even if the other side has a reasonable interpretation and the government's interpretation is at minimum plausible. And therefore, sovereign immunity is retained. There hasn't been a clear and unequivocal waiver. I'm still a little bit confused about the government's position on ambiguity. Do you contend that this proviso is ambiguous or it is not? Yes, we concede it's ambiguous. You say it is ambiguous. We concede the plaintiff's reading isn't beyond the pale. You can plausibly read it in plaintiff's way. And that was the same thing that happened in the Supreme Court's decision in Cooper. In Cooper, the court held, we do not claim that plaintiff's reading, the contrary reading of the statute is inconceivable. The court conceded you could read it either way. And so your position is that Dolan helps us resolve ambiguity? So, Dolan helps you resolve ambiguity. How? I mean, Dolan seems to be about breadth. I don't, I'm not tracking. Well, sure. So, Dolan helps you resolve ambiguity because there the question was is the United States liable for the negligent transition of mail? So, there the mail had been spewed on somebody's porch and they slipped on it. And you could read that as like, well, negligent transmission that was done in a negligent fashion. The United States has a limited immunity for it. The courts have looked at the rest of the statute. It's talking about miscarriage, loss of mail, mail being delivered improperly to the wrong person or lost in the system. That limits the breadth of negligent transmission. So, it's not covered just leaving it on the porch. It's talking about mail going somewhere else. So, similarly here, we think execute searches has a criminal connotation. But we agree if you just viewed it totally in isolation, you might have it encompass administrative searches as well. But when it's paired with make arrests, clearly criminal, seize evidence for violations of criminal law. Or, sorry, seize evidence for violations of law. That's reading into a criminal context. And so, you can appropriately narrow execute searches to the criminal context. But then we have to read out or, right? No, no, no. So, the or point, I think my colleague said, you know, we're reading the investigative out. That's incorrect. And I point you to the Seventh Circuit's decision in Bunch. And there it was discussing whether an ETF employee had authority to either just enter into a site of suspected arson and conduct a search for violations of federal law, whether or not there had been an explosive use, and potentially seize any evidence there. That person did not have arrest authority. And the court remanded back for further factual finding about whether or not that person had that kind of authority. But still, it would be traditional criminal law enforcement authority there. And I'm just going back to your Honor's question at the beginning. I don't hear plaintiff articulating a textual basis for learning more here. The other courts and appeals have held outside the TSA context. Administrative searches aren't covered. So, somebody, a USTA inspector who inspects meat packing plants for violations of the Food, Drug, Cosmetic Act, they're doing an administrative search. I don't think there's any fair reading of the statute that would say they're an investigative law enforcement officer. Plaintiff posits, like the Third Circuit majority did, that maybe you can have an atextual reading that limits it. That it's about physical touches or intrusive searches. But that's atextual. And the question here is about Congress's words, the words that Congress chose, and whether those by themselves unambiguously waive sovereign immunity. And we don't think they do. And just on Maude's point, I know that there's been some discussion of this as a strip search. So, just to clarify the facts here. Before you get to that, kind of the flip side of TSA having just returned from an international flight, I had to go through passport control and customs. And custom officers could, they didn't, but they could have gone through my luggage. And are they law enforcement investigatory officers under the proviso, or are they something else? A moment, Your Honor. We may have addressed this in our brief, but I just want to recall. Border control officers under NERSS versus United States, does that page 24 of our brief, are law enforcement officers because they possess those traditional, please note, leave What are you reading from? Who said that? Page 24 of our brief. Your brief, but I mean, is there authority for that? It's a Ninth Circuit decision. It's NERSS versus United States, and if I recall correctly, the basis for that was that customs and border control have statutory authority to make arrests. I mean, I think of border control as kind of the international border versus at airports. Are customs the same as border patrol between the United States and Mexico? I mean, obviously, there are going to be some differences. The scope of searches at the borders, there may be greater authority to conduct a criminal investigative search at the border as well, but here the searches aren't for finding a violation of federal law. They're to ensure the safety of the passengers on the plane. Right? It's completely legal to have a lithium-ion battery. I get that. So are customs airport customs officers, are they covered by the FTC or not? I think this is true. They have by statutory regulation authority to make those arrests or seize evidence or execute those searches. Then they have the authority that the law enforcement for ISIL contemplates they would qualify. But that's different from the TSA screeners here who don't have that authority. Counsel, before you move on, I had one question about what is the government's view on how we should be thinking about this case in light of Bivens or the absence, potential absence, of a Bivens remedy? And I guess I should preface that by asking you, our circuit has not said that a Bivens cause of action can be sustained against a TSO. Is that correct? Yes, I would believe it would be a question of first impression. I'm not going to predict what the government's litigation position would be in that case, but let's assume there would be no such remedy given the Supreme Court's directives of late. How do we understand this case in the context of the absence of a Bivens cause of action and really what would be the remedy in this case for folks who are harmed in the way that this plaintiff was? So, the question about whether or not to make taxpayer funds available for redress is a decision that Congress seems to make as a politically accountable branch. But the question of whether or not there are other available avenues for redress, there is a TSA administrative redress process that you can submit plaintiffs to. Plaintiffs can challenge TSA screening procedures as arbitrary capricious or violative of law in other ways. If the screeners' actions are not within the scope of their employment, the United States won't certify them, and that, even if the United States does, that certification can be challenged in court. There's a process for adjudicating that. Obviously, if the screener does something totally inappropriate or outside the bounds, we can fire them. And there have been instances where TSA screeners have been permanently prosecuted for conducting things that are not even searches but just amounting to sexual assault. There's a case in the Eastern District of New York about that from some years ago. Is there any monetary damages remedy on the list you just provided? No, because the question about providing monetary damages, as the Supreme Court is explaining in those decisions, really is a separation of powers question. The courts usually don't have the authority to create that cause of action, and the choice that Congress made in enacting both the FTCA and the Westpaw Act is about when does the United States waive its own sovereign immunity, and that's why the canon is about sovereign immunity coming there. If there is a policy choice, if it's a good policy to expand the FTCA to encompass these or other types of claims, that's something that Congress is in the best position to consider. All right, counsel, thank you. Your time's expired. Mr. Corbett, you have some rebuttal time? I am glad that opposing counsel conceded that my reading is plausible because 17 circuit judges in the last five years have also considered the same, so I'm glad we all have a plausible way of looking at it. As the court just alluded to, there is no money damages remedy. There is no guaranteed remedy at all. TSA is basically saying we have a complaint department, and that's enough. We might fire employees. I'm working on a case right now in Texas where a TSA screener, a male, grabbed a woman's breasts at the checkpoint. He wasn't fired. It's been two years. There is no remedy here other than the FTCA, so I just hope the court keeps that in mind, that no matter how ridiculous and outrageous the conduct, if it happens while the employee is working, there will be no remedy if the court denies FTCA remedies. Shall I move on to the other issues, or does the court have more questions on FTCA? Yeah, go ahead. You can move on. Okay, so the remaining three issues are the court essentially decided, I think most significantly, that my client did not suffer sufficiently severe symptoms of emotional distress. And in this case, my client listed the following symptoms in her complaint. Symptoms of panic attack, racing heart, shortness of breath, uncontrollable shaking, nausea, uncontrollable movement of arms, trembling of the legs requiring her to sit, distressing memory, severe loss of control of the body, sweating, tightness in throat, headaches, hot flashes, emotional numbness, and avoidance of the symptoms that lasted for months. She had a deposition where there was no consistent testimony with that. There's been no testimony otherwise. The district court held that this is, as a matter of law, insufficiently severe for an emotional distress claim, largely because my client ended up going back to work. Is there an objective component to that? I certainly credit the subjective experience of your client, but do we have to, I mean, I understand the district court saying in effect that there's an, you know, objectively what happened here wouldn't raise to the severity of the other attacks under Oklahoma law that sustained an infliction. I think the subjective part is that the district court is supposed to be a gatekeeper, to say that essentially that there's no way that the finder of fact could conclude that this was sufficiently severe. And in this case, I don't think you can say that. The court can't say as a matter of law that this isn't enough. It is kind of a subjective thing at the end. At the end, the trier of fact has to be convinced that this is severe, and there's, you know, you can try and balance it against cases that have gotten one way versus the other, and we have. We've shown cases where someone was subject to workplace verbal abuse and that person was found to have severe enough emotional distress and so forth. So, we think the court below was applying plainly the wrong standard with the emotional distress claim. I see I'm out of time. Thank you, counsel. We appreciate your arguments. Counselor excused, and the case is submitted.